# United States Court of Appeals
## For the First Circuit

---

No. 09-1804

ROBERT MELÉNDEZ,

Plaintiff, Appellant,

v.

AUTOGERMANA, INC.,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Justo Arenas, U.S. Magistrate Judge]

---

Before

Torruella, Lipez, Circuit Judges,
and Barbadoro,[*] District Judge.

---

Peter John Porrata, with whom Law Offices of Peter John Porrata, was on brief for appellant.
Eduardo M. Veray-López, with whom Jesús R. Rabell-Méndez, Rabell-Méndez C.S.P., Phillip A. Escoriaza, and Zorrilla & Escoriaza Law Offices, were on brief for appellee.

---

October 12, 2010

---

[*] Of the District of New Hampshire, sitting by designation.

**TORRUELLA**, <u>Circuit Judge</u>.  In this age discrimination in employment action, Plaintiff-Appellant, Robert Meléndez (Meléndez), a former BMW car salesman at the Autogermana dealership in Puerto Rico, appeals the district court's dismissal of his claim of discriminatory discharge in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623 (ADEA).  Meléndez also challenges the district court's denial of his motions for reconsideration.  In dismissing Meléndez's claim at the summary judgment stage, the district court found that Meléndez successfully established a <u>prima facie</u> case of discrimination, but ultimately concluded that Meléndez failed to show that Autogermana's proffered non-discriminatory reasons for dismissing him were pretexts that masked age discrimination.  After careful review of the record, we affirm the district court's dismissal of Meléndez's age discrimination claim and find no abuse of discretion in the district court's denial of Meléndez's motions for reconsideration.

## I. <u>Facts and Procedural History</u>

Meléndez worked as a BMW car salesman for Defendant, Autogermana, Inc., over the course of approximately 10 years until Autogermana discharged him on July 7, 2006.  Meléndez was 50 years of age at the time of his dismissal.

Throughout the course of his employment at Autogermana, Meléndez received several sales performance awards.  For example, Meléndez received the Profiles in Achievement Award from BMW of

North America in 2001, 2002, 2003, 2004, and 2005. From 2004 to 2005, however, Meléndez also received several performance memoranda regarding his failure to meet the required sales quotas for particular months. On June 22, 2004, Meléndez received a performance warning which stated that Meléndez had failed to meet the used car sales quota of two vehicles. A second memorandum dated August 10, 2004 informed Meléndez that he had not sold the required thirteen new cars in the month of July 2004, and that he had one of the poorest sales records of the sales department staff. In 2005, Meléndez received performance warnings because he failed to meet the monthly sales quota in the months of March and April.

In March 2006, and prior to dismissing Meléndez, Autogermana adopted and implemented a new monthly sales quota. In a memorandum dated February 25, 2006, Autogermana informed its sales staff that a new monthly sales quota and payment structure would be adopted on March 1, 2006, requiring all salespersons to sell twelve new cars and one used car each month. The memorandum also informed employees that they would be required to sell at least 85% of their new car sales monthly quota, and that those who did not meet this threshold would be "subject to immediate dismissal." Autogermana was to perform quarterly evaluations beginning on July 7, 2006.[1]

---

[1] The memorandum stated:

There will be a quarterly evaluation in which the

Shortly after the new sales quota was adopted, Autogermana discharged Meléndez. The letter of dismissal stated that after evaluating Meléndez's sales performance in light of the new sales quota, Autogermana had determined that Meléndez had not met the quota and was thus subject to dismissal. The letter also explained that Autogermana had evaluated Meléndez's sales performance during the prior eighteen months. On that same day, Autogermana discharged Carlos Palmero, a fellow salesperson who was approximately 32 years of age.[2]

On November 16, 2007, Meléndez filed the present suit in the United States District Court for the District of Puerto Rico, claiming that he was terminated because of his age in violation of the ADEA and Puerto Rico Law 100. Autogermana moved for summary judgment. On March 17, 2009, the district court granted summary

_____

salesperson's individual sales will be taken year to date, and it will be compared with the quota accrued to the corresponding period. Every salesperson that meets less than 85% of his quota of new cars is subject to immediate dismissal from his job at the Company. If meeting [sic] between 85% and 99% of their [sic] quarterly quota, the salesperson will receive a performance memorandum. If the salesperson receives three memoranda within a period of 12 months, he will be subject to dismissal from his job at the Company. Quarterly evaluations will be performed in the following dates: April 7[,] July 7[,] October 7[,] [and] January 7[.] Only three quarters will be evaluated during [the] 2006 fiscal year, beginning on July 7, 2006.

[2]  In his deposition, Meléndez admitted that Autogermana was planning to dismiss at least four other employees who had not met the new monthly quota.

-4-

judgment in Autogermana's favor on the age discrimination claim and dismissed Meléndez's supplemental state law claim under Puerto Rico Law 100, P.R. Laws Ann. tit. 29, §§ 146-51. The district court found that Meléndez had established a prima facie case of discrimination, but ultimately concluded that Meléndez failed to show that Autogermana's proffered non-discriminatory reason for discharging Meléndez was a pretext for age discrimination.

On March 30, 2009, Meléndez filed a motion for reconsideration of the judgment in which he also requested a stay of the judgment pending final resolution of a parallel state case, Meléndez v. Autogermana, Inc., Civil No. KPE 2007-1402 (807) (P.R. Ct. of First Instance March 30, 2009), in which Meléndez claimed he was entitled to severance pay under Puerto Rico Law No. 80.[3] On April 4, 2009, Meléndez submitted a second motion for reconsideration in which he explained that the Commonwealth of Puerto Rico's trial court had issued a judgment granting him relief under Puerto Rico Law 80. Arguing that once the state-court judgment became final it would have preclusive effect on the present ADEA litigation, Meléndez requested a stay of the district court proceedings and/or judgment. Meléndez also requested leave

---

[3] "Law 80 imposes a monetary penalty on employers who dismiss employees without just cause." Otero-Burgos v. Inter Am. Univ., 558 F.3d 1, 7 (1st Cir. 2009). If the employee is discharged without just cause, he is entitled to severance pay known as a "'mesada,' which is calculated using a formula provided by the statute." Id.

-5-

to file an English translation of the state-court judgment. The district court denied the two motions for reconsideration on April 23, 2009. Subsequent to the district court's denial of Meléndez's first two motions for reconsideration, he filed a motion for reconsideration of the district court's April 23rd order, and requested leave to file an English translation of the state-court judgment granting him severance pay under Puerto Rico Law 80. The district court denied this third motion. Meléndez subsequently filed this timely appeal, challenging both the dismissal of his ADEA claim and the district court's denial of his motions for reconsideration.

## II. Standard of Review

"We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party." Roman v. Potter, 604 F.3d 34, 38 (1st Cir. 2010). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III. Discussion

### A. ADEA claim

The ADEA makes it unlawful for an employer to take an adverse employment action against an employee who is forty years of

-6-

age or older on the basis of his age. 29 U.S.C. §§ 623(a), 631(a). In an ADEA claim, the employee "shoulder[s] the ultimate 'burden of proving that his years were the determinative factor in his discharge, that is, that he would not have been fired but for his age.'" Torrech-Hernández v. Gen. Elec. Co., 519 F.3d 41, 48 (1st Cir. 2008).

Absent direct evidence of discrimination, a plaintiff-employee may avail himself of the McDonnell Douglas burden-shifting framework to "prove that he would not have been fired but for his age." Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007) (citation omitted). Under this framework, the plaintiff-employee must show: (1) that he was at least forty years old when he was fired; (2) that his job performance met the employer's legitimate expectations; (3) that he suffered an adverse employment action such as a firing; and (4) that the employer filled the position, thereby showing a continuing need for the services that he had been rendering.[4] See Vélez v. Thermo King de P.R., 585 F.3d 441, 447 (1st Cir. 2009); Suárez v. Pueblo Int'l Inc., 229 F.3d 49, 53 (1st Cir. 2000). This "prima facie showing is not especially burdensome, and once established, gives rise to a rebuttable presumption that the employer engaged in intentional

[4] The parties have characterized this as a firing and replacement case and the district court assumed it was. We thus abide by this characterization.

age-based discrimination." Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995) (citations omitted).

Once the plaintiff-employee establishes a prima facie case for discrimination, the burden of production shifts to the defendant-employer to produce sufficient competent evidence to allow a rational fact-finder to conclude that a legitimate non-discriminatory reason existed for the termination. See id.; see also Vélez, 585 F.3d at 448. If the employer articulates such a non-discriminatory reason, the plaintiff-employee must then prove "that the employer's given reason 'was pretextual' and that the record evidence would permit a reasonable jury to infer that the real reason was 'discriminatory animus' based on his age." Cordero-Soto v. Island Finance, Inc., 418 F.3d 114, 119 (1st Cir. 2005).

## 1. First stage: the prima facie case

The district court concluded that Meléndez successfully mounted a prima facie case of age discrimination. On appeal, the parties agree that Meléndez satisfies the first, third, and fourth prongs of the prima facie case. Meléndez was 50 years old at the time he parted company with his former employer, he was discharged, and Autogermana admitted it had a continuing need for Meléndez's services.[5] Autogermana claims, however, that Meléndez has failed

[5] Meléndez argues that in assessing whether a plaintiff-employee established a prima facie case of discrimination under the ADEA, this court should not require evidence that the plaintiff's duties

-8-

to satisfy the second prong of the prima facie case as he was not meeting the company's legitimate expectations at the time of his dismissal. To support this claim, Autogermana points to Meléndez's sub-par sales performance during the eighteen months prior to his dismissal, and to his failure to meet the new sales quota during the April-June 2006 quarter. Autogermana's argument regarding the prima facie case is unavailing.

First, we cannot "consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 574 (6th Cir. 2003); see also Vélez, 585 F.3d at 448 (same). Thus, because Autogermana invoked Meléndez's failure to meet the sales quota in arguing that Meléndez was dismissed for non-discriminatory reasons, we cannot rely on Meléndez's poor sales performance in assessing whether he satisfied

---

were assigned to a person outside the age group protected by the ADEA (someone under the age of 40). First, in holding that Meléndez had not provided sufficient evidence to show that he was dismissed because of his age, the district court did not require Meléndez to show that he was replaced by someone outside the protected class. Secondly, and more importantly, the Supreme Court rejected this contention in O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996), holding that "[b]ecause it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class [someone under the age of 40] is not a proper element of the McDonnell Douglas prima facie case." Because the touchstone of the ADEA inquiry is whether plaintiff suffered discrimination because of his age, plaintiff may make his prima facie case by showing that he was replaced by a much younger person, regardless of whether the younger person was within the protected class. See id., at 313.

the legitimate expectations prong of the prima facie case. If we were to consider Autogermana's stated reason for firing Meléndez as evidence that he was not meeting the company's expectations, we would "bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination." Wexler, 317 F.3d at 574.

To show that he was meeting Autogermana's legitimate expectations at the time of his dismissal, Meléndez points to his ten-year career at Autogermana. He relies on the awards he received from 2001 to 2005 for his sales performance and on the fact that at the time of his dismissal, he earned roughly the same salary that he had received in prior years. Meléndez also contends that his failure to meet the sales quota in 2006 was due to reasons other than his poor or inadequate sales performance. He argues that the economic downturn in Puerto Rico led to a reduction in overall company sales and that as a consequence, all or most salespersons were unable to meet the new sales quota. Mindful that an employee's burden at the prima facie stage is not particularly onerous, Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003), we find that the evidence proffered by Meléndez is minimally sufficient to show that there was a triable issue as to

-10-

his ability to meet Autogermana's legitimate expectations.[6]  See Woodman, 51 F.3d at 1092 ("proffer of substantial wage increases and ten years of positive performance reviews, blemished by but one negative performance evaluation" found sufficient to create a triable issue as to whether employee was meeting his employer's legitimate expectations); Vélez, 585 F.3d at 448 (legitimate expectations prong met where plaintiff relied on his twenty-four years of employment with defendant without being subject to discipline due to his performance).

## 2. Second stage: legitimate and non-discriminatory reason for dismissal

Having held that Meléndez successfully established a prima facie case of age discrimination, we must determine whether Autogermana articulated a legitimate and non-discriminatory reason for dismissing Meléndez.  We need not tarry.  Autogermana claims that it discharged Meléndez because he failed to meet the sales quota that was implemented in March 2006.  Autogermana also explains that it decided to discharge Meléndez because his sales record during the eighteen months prior to his dismissal revealed that Meléndez was among the poorest performers in the company.  We

---

[6]  We are cognizant that Meléndez's failure to meet the sales quota for the April-June 2006 quarter could undermine Meléndez's contention that he was meeting his employer's legitimate expectations at the time of his dismissal.  We will fully consider the evidence regarding Meléndez's sales performance in examining whether Autogermana's proffered reason for dismissing him was a pretext masking discrimination.

-11-

find that this is enough "to enable a rational factfinder to conclude that there existed a nondiscriminatory reason" for Meléndez's dismissal. Ruiz v. Posadas de San Juan Assocs., 124 F.3d 243, 248 (1st Cir. 1997); see also García v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008) (employer met its burden of providing a legitimate, non-discriminatory reason by stating that employee was discharged due to her deficient performance).

**3. Third and final stage: pretext and discriminatory animus**

At the final stage of our inquiry, the burden shifts to Meléndez, who, unaided by the presumption that was previously raised in the prima facie case, must put forth sufficient facts for a reasonable fact-finder to conclude that Autogermana's proffered reason for discharging him is a pretext and that the true reason behind the firing was discriminatory animus. See Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 6 (1st Cir. 2000). "It is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination.'" Mesnick v. General Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991) (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990).

-12-

Meléndez puts forth several arguments in support of his claim that Autogermana's stated reason for dismissing him was pretextual. First, it is Meléndez's theory that Autogermana improperly evaluated his sales record for the April-June 2006 quarter through the lens of the new sales quota and that this raises the inference that Autogermana's proffered reason for his dismissal was pretextual. Secondly, Meléndez invokes his good sales record in the company to argue that considerations other than his sales performance led to his dismissal. Thirdly, Meléndez claims that the fact that, due to the economic downturn, overall company sales dropped and other salespersons were likewise unable to meet the sales quota raises the inference that the real reason behind his dismissal was age discrimination. Finally, Meléndez claims that the new sales quota was "unreal" or unreasonable, and that Autogermana's reliance on the quota was but a pretext for illegal discrimination.

We begin by addressing Meléndez's claim that Autogermana misapplied the February 2006 memorandum in an effort to cover the real reasons behind his dismissal. Although the memorandum was far from a paragon of clarity, we cannot conclude that Autogermana, having issued a memorandum informing employees that a new sales quota would be put into effect in March 2006, and having advised employees that the first quarterly evaluation was to be performed on July 7, 2006, was precluded from evaluating employee performance

during the April-June quarter through the lens of the new sales quota.  Moreover, even if we draw the inference that Autogermana could not evaluate Meléndez's sales performance through the lens of the new sales quota, we would only be able to conclude that Meléndez's dismissal was unjust or wrongful.  This, however, is insufficient for a reasonable trier of fact to conclude that Autogermana's evaluation of Meléndez's sales performance was a pretext masking its impermissible discriminatory animus.  Cf. Feliciano de la Cruz, 218 F.3d at 8 (finding that "even if a rational trier of fact could infer from the evidence of pretext that [employer's] decision to fire [plaintiff] was 'unfair' (because she continued to perform her job well), that proof [was] insufficient to state a claim under Title VII" for discrimination on the basis of race).  This is particularly so in light of the evidence showing Meléndez's overall sub-par performance during the eighteen months prior to his dismissal.

While Meléndez put forth some evidence to show that he had a successful record as a salesperson during his ten-year tenure at Autogermana, the record supports the conclusion that, at the time of his dismissal, Autogermana believed that Meléndez was not meeting the company's legitimate performance expectations.  See id. at 7 (stating that the essence of the pretext question is not whether plaintiff "was actually performing below expectations, but whether [the employer] believed that[]he was").  The evidence

-14-

presented by Autogermana reveals that, even ignoring the new sales quota, Meléndez had one of the poorest sales records in the company.[7] Meléndez's sales record from January 2006 until July 2006 reveals that he had the second poorest sales record, and sales statistics for the year 2005 also show that Meléndez was among the poorest performers within the company.

Meléndez simply asks us to disregard the evidence regarding his inadequate sales performance at the time of his dismissal and to abide by his own assessment of his sales performance. We find that this is insufficient for a reasonable fact-finder to conclude that Autogermana did not actually believe that Meléndez was performing below expectations at the time of his dismissal.

Regarding Meléndez's contention that the sales quota was "unreal," we should clarify that Autogermana's decision to adopt a new sales quota is a business decision that we may not question in

---

[7] Before the district court, Meléndez lodged an objection to Autogermana's reliance at summary judgment on statistical evidence -- tables -- regarding employee sales records for the years 2005 and 2006. In his statement of uncontested facts, Meléndez claimed that the tables were self-serving and that the statistics did not include details regarding the types of cars each employee sold. The district court rejected Meléndez's objection and relied on these tables in granting summary judgment in Autogermana's favor. Because Meléndez has not challenged the admissibility of the statistical evidence on appeal, we need not examine whether the district court abused its discretion in considering the tables submitted by Autogermana. See Bennett v. Saint-Gobain Corp., 507 F.3d 23, 28 (1st Cir. 2007) ("abuse-of-discretion standard applies to a district court's decision to admit or exclude evidence at the summary judgment stage").

an employment discrimination case. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991) ("Courts may not sit as super personnel departments, assessing the merits - or even the rationality - of employers' nondiscriminatory business decisions."). That is, Meléndez's general averment that the sales quota was "unreal," is insufficient to allow a reasonable fact-finder to conclude that the quota was adopted and employed to mask Autogermana's discriminatory animus. After all, "[t]he 'ADEA does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's age.'" Id. (citation omitted); see also Webber v. Int'l Paper Co., 417 F.3d 229, 238 (1st Cir. 2005) ("[P]ursuant to the 'business judgment' rule[,] an employer is free to terminate an employee for any nondiscriminatory reason even if its business judgment seems objectively unwise.") (citation omitted).

Further, evidence showing that Autogermana's overall sales in 2006 were lower than its 2005 sales[8] is insufficient for a reasonable trier of fact to conclude that Autogermana discharged Meléndez for reasons other than his sub-par sales performance. While new car sales had declined in 2006, some of the salespersons were indeed able to sell the requisite number of cars required by

---

[8] For example, it is undisputed that by May 2005, Autogermana had sold 440 new cars, while Autogermana had sold 377 new cars by May 2006.

the quota, or fell within the 85% threshold. Furthermore, the record supports the conclusion that Autogermana decided to dismiss the two salespersons with the poorest sales records and that the company also considered discharging other employees. Regardless of whether the economic downturn may have affected Meléndez's sales performance, the record shows that, when compared with his fellow co-workers, Meléndez was not meeting Autogermana's expectations. We thus find that Meléndez has failed to raise the inference that Autogermana's proffered reason for dismissing him was pretextual.

In his attempt to support a claim of discriminatory discharge, Meléndez states that Autogermana waged an insidious "discrimination campaign" against him, whereby members of Autogermana's staff regularly ostracized and mocked him because of his age. Meléndez argues that co-workers referred to him as "el abuelo" ("grandpa"), or "el viejo" ("the old man"), since he was a single parent, and had his first child at the age of 45. Meléndez also refers to other incidents in which his co-workers criticized the way he dressed, remarking that he wore outdated suits and shoes.[9] He also claims that co-workers intentionally excluded him from a staff picture and that, prior to his dismissal, his desk was moved away from the lobby, thereby preventing him from greeting potential customers.

---

[9] Meléndez specifically points to an incident in which Autogermana's General Manager publicly called him "la vieja" ("the old lady") because he wore outdated shoes.

We recognize that some of these remarks by co-workers were related to Meléndez's age. We have explained, however, that "'stray workplace remarks,' as well as statements made either by non-decisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." González v. El Día, Inc., 304 F.3d 63, 69 (1st Cir. 2002). While evidence of age-related comments may be sufficient to support an inference of pretext and discriminatory animus, Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000), Meléndez has failed to adduce sufficient evidence for a reasonable trier of fact to conclude that the remarks were both temporally and causally connected to Autogermana's decision to discharge him. Rivera-Aponte v. Restaurant Metropol #3, Inc., 338 F.3d 9, 12 (1st Cir. 2003) ("The lack of a direct connection between the words and the employment action significantly weakens their probative value.") (citation omitted); McMillan v. Mass. Soc'y for the Prevention of Cruelty to Animals, 140 F.3d 288, 301 (1st Cir. 1998) ("[E]ven if [stray] remarks are relevant for the pretext inquiry, their probativeness is circumscribed if they were made in a situation temporally remote from the date of the employment decision."). These remarks, even if ageist, are insufficient to overcome the compelling evidence proffered by Autogermana showing that Meléndez was dismissed due to poor work performance and they

thus fail to raise the inference that the real reason for Meléndez's termination was age discrimination.

While Meléndez steadfastly claims that he was dismissed because of his age, it is uncontested that Meléndez -- then 50 years old -- was discharged alongside a fellow salesperson who at the time was 32 years old. Also, Meléndez himself admitted both in his deposition and in his opposition to Autogermana's motion for summary judgment that Autogermana also had to dismiss four other salespersons. There is thus insufficient evidence to draw the inference that impermissible age discrimination was the determinative factor in Meléndez's termination. See Torrech-Hernández, 519 F.3d at 48 (in an ADEA case, plaintiff shoulders the ultimate burden of proving that "his years were the determinative factor in his discharge"). We therefore affirm the district court's grant of summary judgment for Defendant Autogermana.

## B. Denial of Meléndez's post-judgment motions

"As a general matter, a motion for reconsideration may only be granted if the original judgment evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations. Global Naps, Inc. v. Verizon New Eng., Inc., 489 F.3d 13, 25 (1st Cir. 2007). We review the district court's denial of a motion for reconsideration for abuse of discretion, id., and will not overturn the court's determination "unless a miscarriage of justice is in prospect or the record otherwise

-19-

reveals a manifest abuse of discretion." Rivera v. Riley, 209 F.3d 24, 27 (1st Cir. 2000).

Following the district court's dismissal of his claims at summary judgment, Meléndez filed two motions for reconsideration seeking relief from the district court's judgment. After the district court denied these motions, Meléndez filed a third motion, seeking reconsideration of the district court's denial of his first two Rule 59(e) motions. We will address the arguments raised by Meléndez in these motions and review the district court's orders on them, in turn.

In his first motion for reconsideration, Meléndez argued that the court misinterpreted the February memorandum adopting the new sales quota. He claimed that the district court overlooked and misinterpreted his argument that Autogermana could not apply the new sales quota in evaluating his sales performance prior to July 2006. He also contended that Autogermana's reliance on his sales performance during the prior eighteen months was simply a pretext, as he received awards for his sales performance during that same eighteen-month period. Secondly, Meléndez urged the court to stay the judgment pending final resolution of a parallel state-court case in which he was seeking relief for an unjust dismissal under Puerto Rico Law 80.

On April 4, 2009, Meléndez filed a second motion for reconsideration which essentially renewed his request for a stay of

the proceedings pending final resolution of his parallel unjust dismissal case.[10]  In this second motion, however, Meléndez explained that the Commonwealth's Superior Court had issued a judgment granting him relief under Law 80.  According to Meléndez, although the judgment was subject to appeal and could not yet be considered a final judgment for collateral estoppel purposes under Puerto Rico law, once the judgment became final, it would have preclusive effect in the present ADEA litigation.  Meléndez also requested leave to file an English translation of the judgment entered by the Commonwealth's Superior Court in his Law 80 action.

In an opinion and order issued on April 23, 2009, the district court addressed the arguments raised by Meléndez in his first and second motions for reconsideration.  Finding no manifest error of law in its prior conclusion that Meléndez was dismissed for failure to meet Autogermana's legitimate expectations, the district court denied the requested relief from the judgment.  The

---

[10]  We note that Meléndez's first Rule 59(e) motion was timely filed within ten days of the final judgment.  Thus, the appeal period was tolled and began to run anew when the district court denied these motions on April 23, 2009.  Meléndez's second motion, however, was filed outside the mandatory ten-day period to file motions for reconsideration.  If we viewed Meléndez's April 4th filing as a separate Rule 59(e) motion, we would have to conclude that it was untimely and that thus, the district court lacked jurisdiction to consider it under Rule 59(e).  See Fisher v. Kadant, Inc., 589 F.3d 505, 511 (1st Cir. 2009).  But because Meléndez's second motion basically informed the court that the Commonwealth's Superior Court had issued a judgment in his Law 80 case, and expanded the arguments raised in Meléndez's first timely motion, we find no error in the district court's decision to address the arguments raised by Meléndez in this second, supplemental motion.

district court also denied Meléndez's request for a stay of the judgment pending final resolution of his state-court action.

As we discussed in section III. A., supra, the evidence on which Meléndez relies to support his age discrimination claim fails to raise the inference that he was dismissed for reasons other than his sub-par work performance, and Meléndez failed to point to any newly discovered evidence capable of altering this conclusion. On reconsideration, Meléndez simply restated his argument that Autogermana was precluded from evaluating his work performance in light of the new sales quota, claiming that the district court misconstrued this argument. The district court, however, explained that it had not overlooked this argument, but that it simply found it insufficient to support the conclusion that Meléndez was dismissed due to his age. We find no error in this conclusion. Because Meléndez failed to point to any manifest error of law in the district court's judgment dismissing his ADEA claim, we find no abuse of discretion in the district court's denial of Meléndez's motions for reconsideration.

We also fail to find any abuse of discretion in the district court's refusal to stay the judgment in this case until the Commonwealth courts issued a final and unappealable judgment in Meléndez's parallel state-court action for unjust dismissal under Puerto Rico Law 80. This argument is unavailing as Meléndez himself admitted in his motion for reconsideration that collateral

estoppel principles did not apply because the judgment issued by the Commonwealth's Superior Court was not yet "final and unappealable" as required under Puerto Rico res judicata and collateral estoppel principles.[11] See R.G. Fin. Corp. v. Vergara-Núñez, 446 F.3d 178, 183 (1st Cir. 2006) (stating that a judgment has preclusive effect under Puerto Rico law only if, among other requirements, the judgment is "final and unappealable"); see also Cruz v. Melecio, 204 F.3d 14, 20 (1st Cir. 2000) ("[A] commonwealth court judgment cannot be accorded preclusive effect until all available appeals have been exhausted (or the time for taking them has expired)."). At the time Meléndez filed his motion for reconsideration, the Commonwealth's courts had not issued a final and unappealable judgment. This defeats any claim that collateral estoppel or claim preclusion principles would apply under Puerto Rico law. See Cruz, 204 F.3d at 21 (finding that appellant's federal suit was not foreclosed by res judicata principles where the "commonwealth court's judgment in this case was on appeal at the time the federal district court" issued its decision dismissing the case). We therefore find no abuse of discretion in the

---

[11] The parties and the district court assumed that a Rule 59(e) motion was the proper vehicle to request relief from the district court's final judgment on the basis of collateral estoppel. Because we find that Meléndez's collateral estoppel claim fails on the merits, we assume, without deciding, that the issue was properly raised before the district court in Meléndez's Rule 59(e) motions.

district court's denial of Meléndez's first and second motions for reconsideration.

Finally, we find no abuse of discretion in the district court's denial of Meléndez's request for reconsideration of the court's denial of his first and second motions for post-judgment relief. In this third post-judgment motion, Meléndez essentially challenged the district court's refusal to grant him leave to file an English translation of the state-court judgment. Because we find no abuse of discretion in the district court's decision that the non-final Law 80 judgment could not have any preclusive effect on the present ADEA litigation, we cannot find any error in the court's decision to deny Meléndez's request to file an English translation of the state-court judgment and order.[12]

## IV. Conclusion

For the reasons stated, we affirm the district court's grant of summary judgment for Autogermana and affirm the court's denial of Meléndez's motions for reconsideration.

**Affirmed**.

---

[12] To the extent that Meléndez's third motion also sought relief from the underlying judgment dismissing his ADEA claim, we find that the district court properly denied the motion as it was filed outside the ten-day period following the entry of the district court's March 18, 2009 judgment dismissing Meléndez's claims. Fisher, 589 F.3d at 511 (district court lacks authority to consider a Rule 59(e) motion that is filed outside "the ten-day window that opened following the entry of judgment").