**Wanda MALDONADO–GONZALEZ,**
**Plaintiff,**

**v.**

**Commonwealth of PUERTO RICO**
**POLICE; et al., Defendants.**

**Civil No. 12–1088 (PAD).**

United States District Court,
D. Puerto Rico.

Signed June 25, 2015.

Emil J. Rodriguez–Escudero, Jorge Martinez–Luciano, M.L. & R.E. Law Firm, San Juan, PR, for Plaintiff.

Jaime J. Zampierollo–Vila, Zulma Carrasquillo–Almena, Department of Justice of the Commonwealth of Puerto Rico, Lumy Mangual–Mangual, San Juan, PR, for Defendants.

## OPINION AND ORDER

DELGADO–HERNÁNDEZ, District Judge.

Plaintiff Wanda Maldonado–González initiated this action against her employer—the Police Department of Puerto Rico ("PDPR")—and a number of PRPD officers, alleging sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* federal constitutional violations; and violations of Puerto Rico law. At Docket Nos. 38 and 72, the court dismissed all but plaintiff's Title VII claims. Then, the

PRPD moved for summary judgment as to those claims (Docket No. 78). Plaintiff opposed (Docket No. 85). For the reasons explained below, the motion for summary judgment is GRANTED and the case DISMISSED.

## I. *STANDARD OF REVIEW*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is need for trial. *Mesnick v. General Electric Co.*, 950 F.2d 816, 822 (1st Cir.1991).

The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A factual dispute is "genuine" if it could be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is "material" if it potentially affects the outcome of the case in light of applicable law. *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir.2004). As to issues on which the nonmovant has the burden of proof, the movant need to no more than aver absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477

U.S. at 325, 106 S.Ct. 2548; *Mottolo v. Fireman's Fund Insurance*, 43 F.3d 723, 725 (1st Cir.1995).

Conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative will not suffice to ward off a properly supported motion for summary judgment. *Nieves–Romero v. United States*, 715 F.3d 375, 378 (1st Cir.2013). Careful record review reflects absence of genuine dispute as to the facts identified in the section that follows. Based on those facts, the PRPD is entitled to judgment as a matter of law.

## II. *FINDINGS OF FACT* [1]

### A. *Employment*

Maldonado has worked for the PRPD since May 21, 2004. *See*, Docket No. 77, PRPD's "Statement of Uncontested Material Facts" ("SUMF") at ¶ 1. On December 19, 2007, she was assigned to the Special Arrests Unit of the Criminal Investigation Division of Ponce as an Investigator. SUMF at ¶ 2. The Unit's Director was Sergeant Héctor Millán–Santiago. SUMF at ¶ 3.

### B. *Disobeying Instructions*

On February 12, 2009, while Millán was on official duty outside of Ponce, officer Erwin León–Torres was the Unit's acting supervisor. SUMF at ¶ 4. On February 13, 2009, he reported to Millán that plaintiff had disobeyed his instructions in executing an arrest order in violation of applicable rules and procedures. SUMF at ¶¶ 5 and 9.[2] Millán discussed the incident

---

1. The record confirms the parties not only agree on most of the facts, but also on the applicable law. Plaintiff only denied statements number 11, 12, 88 and 90; and "denied as stated" 5–9, 51, 79, 89, and conceded that many of the relevant facts are uncontested and, thus, that the motion for summary judgment hinges upon "the parties' competing arguments regarding the legal significance of many facts that are not disputed" (Docket No. 85 at p. 2).

2. Plaintiff objects to this statement on the sole basis that "[w]hile the [supporting document] does generically charge with violations of rules and procedures, no concrete rules or procedures are cited within it." Plaintiff's qualification does not, however, contest that

with plaintiff; prepared a "Written Counseling to Member of the Corps;" [3] ordered that copy of the document be given to plaintiff and be placed in her personnel file; and referred the Counseling to Anthony Ortiz–Santana, Director of the Ponce Region Criminal Investigations Corp. SUMF at ¶¶ 10–13.[4]

## C. *Plaintiff's Reaction*

On February 23, 2009, plaintiff reacted to Millán's Counseling complaining of gender-based discrimination. SUMF ¶¶ 13–16 and 70. To that end, she claimed that:

- She felt humiliated and degraded by some of her fellow officers;
- She was subject to "difficult events" at the precinct like being ordered not to drive the patrol car since no woman assigned to the Special Arrests Unit had ever driven the car because it looked bad to have a woman drive a man around;
- She was forced to give up her assigned arrests to other male officers;
- Her supervisor explained that her "word had no effect in the unit";
- Her intellectual capacity was disregarded and she was told her master's degree was obtained online and given as a gift;
- Her physical appearance was questioned (specifically, why did she not wear makeup nor let her hair loose); that
- She had different assignments than her male coworkers; and

León complained that she executed an arrest order in violation of the rules since she allegedly signed an arrest warrant prior to taking the arrestee to court.

**3.** Plaintiff denies this statement claiming that (i) the document speaks for itself; (ii) the version of the facts included in Millan's referral are nor "exactly" the ones included by

- She was told by Millán that she had to "lower the intensity" of her work because the other male officers may become jealous and conspire to have her taken out of the unit. SUMF ¶¶ 17–23.

## D. *Meeting*

On February 24, 2009, Ortiz met with both plaintiff and Millán; discussed the alleged discrimination; ordered Millán to conduct an investigation on plaintiff's allegations and to take immediate action, if warranted, and gave him copy of communication SAIG–AP–CIC–1–226, which requires all supervisors to certify that personnel in their respective divisions have been counseled on this matter. SUMF ¶¶ 24–25. Attached to the communication was a Memorandum from the U.S. Department of Justice informing of a conciliation agreement reached in a gender discrimination and retaliation case filed by a female agent of the PRPD in Fajardo, Puerto Rico, and that Title VII enforcement was a priority of the Civil Rights Division of the Department of Justice. SUMF ¶¶ 26–29.

## E. *Follow Up*

On February 25, 2009, Millán certified compliance with SAIG–AP–CIC–1–226. SUMF ¶¶ 30–32. Two days later, he conducted a local academy in which, among other things, discussed proper behavior toward female officers, sexual harassment and gender-based discrimination. SUMF ¶ 33. He prepared a certification to Ortiz, (i) informing of the local academy conduct-

León in his memo, but a "more succinct" version; and (iii) nowhere in the Memo Milan claims that the use of a police vehicle to execute an arrest violated any protocols. None of those qualifications contest SUMF ¶ 11.

**4.** A Certified English Translation of this and other documents were filed at Docket No. 83.

ed; (ii) the matters discussed; and (iii) submitting signatures of all members of the Special Arrests Unit who attended the academy, including plaintiff, Nuñez, Colón, and León. SUMF ¶ 34. He also sent Ortiz a more detailed letter stating that agents were warned that denigrating comments toward fellow officers and police women and Macho comments alluding to women would not be tolerated. SUMF ¶ 35–37.

### F. *Administrative Complaint*

In March 2009, plaintiff provided a copy of her letter to Ortiz to PRPD Superintendent José Figueroa–Sancha. The PRPD unsuccessfully attempted to resolve the claim through mediation. On July 9, 2009, plaintiff filed a formal Administrative Complaint No. Q–2009–3–4(g)–0123 for alleged gender discrimination. SUMF ¶¶ 46–48. According to the accompanying sworn statement:

- The sex discrimination acts against her began in March of 2008, when she noticed some "professional jealousy and resistance" toward her. SUMF ¶ 51; [5]
- Officer León cautioned plaintiff to take it easy and never considered plaintiff's wishes to go somewhere when they were investigating a complaint. SUMF ¶¶ 52 and 54;
- When the patrol car was assigned to her, Millán found subtle ways of taking away the keys. SUMF ¶ 53;
- Plaintiff felt uncomfortable when she made a mistake as she was chastised by Millán for honest mistakes. SUMF ¶ 55;
- Millán explained her that fellow workers—without mentioning anyone in particular—felt uncomfortable and

that she had to lower her intensity in her work because, otherwise, they would "set [her] up to get [her] her out of the unit." SUMF ¶ 56;

- During a telephone call Millán told her that she "had no voice or vote in the unit," but then "tried to fix it" by saying "it's not that you don't count it's just that you have less experience." SUMF ¶ 57;
- On October 31, 2008, plaintiff was standing in front of the boardwalk with fellow officers Colón and Abdón, and Colón said he would exchange plaintiff for two females that walked by. SUMF ¶ 58. She was upset, looked at Abdón but did not say anything. *Id.* When asked by Abdón why she allowed Colón's behavior, plaintiff said Colón was "incorrigible and ignorant." SUMF ¶ 59;
- On February 9, 2009, Colón asked for a napkin and when plaintiff gave him one, he replied by telling her she was still a part of the unit because she was useful for some things. SUMF ¶ 60;
- Three days later, plaintiff complained to Millán about an injury she suffered while making an arrest. Millán "scolded" her and that she had specific functions and that it was the duty of the male officers to make such arrests. Thus, she "did not have to be jumping fences." SUMF ¶ 62;
- Officer Pacheco explained Millán's instructions that plaintiff was not allowed to drive the patrol car. Plaintiff confronted Millán, and he explained he had received complaints pertaining to her "manner of driving," but plaintiff replied she had her "own driving style." SUMF ¶ 63. Millán later "re-

**5.** Plaintiff denied this statement claiming that it was not the only term she used when addressing the events of March of 2008. Because the Court includes a detailed expla-

nation of plaintiff's allegations to put her complaint in context, plaintiff's objection is misplaced.

tracted" of this instruction. SUMF ¶ 64; and

- During the week of February 21 to 27, 2009, plaintiff saw Millán when she went to the Headquarters and Millán indicated "in an arrogantly manner to leave him the keys of the locker" or else he would break through the lock, to which plaintiff refused. SUMF ¶ 81.

### G. *PRPD's Response*

In March 2009, Millán was transferred to another division because of plaintiff's complaint. SUMF ¶¶ 84–85. On October 27, 2009, the inspector in charge of the administrative investigation recommended that Millán, Colón and León be suspended without pay for thirty days (Docket No. 85, Exh. 2 and Docket No. 90, Exh. 1). Officer Colón was transferred to the Robbery Division, effective July 21, 2009, SUMF ¶ 90 and Plaintiff's "Opposing Statements of Material Facts" at ¶ 90,[6] and on August 27, 2009, Officer León was transferred from the Special Arrests Unit to the Technical Services Division. SUMF at ¶ 91.

### H. *Additional incidents*

On December 21, 2009, Officer David Manzur–Ramos was assigned to the Special Arrests Unit. SMUF at ¶ 92.

On January 5, 2010, he complained of sexual harassment by plaintiff, claiming that she was:

- Touching her breasts in front of him (*Id.* at ¶ 94);
- Making him feel uncomfortable while working with her because she looked at him with "sultry glances" and discussed intimate relations with him (*Id.* at ¶ 95);
- While assigned together in a patrol car, plaintiff touched him and he re-

coiled. Plaintiff also touched her intimate part, making him feel uncomfortable (*Id.* at ¶ 96); and

- Her attitude toward him has made him think that she liked him, which made him uncomfortable and could have had negative consequences in his work (*Id.* at ¶ 97).

After evaluating the complaint, First Lieutenant Gerardo Oliver–Franco decided to transfer plaintiff to the Stolen Property Division of Juana Diaz, pending investigation of Manzur's complaint. SUMF at ¶¶ 98–99.

### I. *Transfer*

On January 12, 2010, plaintiff sent a letter to Oliver explaining that she could not work in Juana Diaz under Second Lieutenant Martha Betancourt's authority because of an incident between Betancourt and plaintiff in 2007. SUMF at ¶ 100. It was plaintiff's contention that due to the incident, she considered working in Juana Díaz "unhealthy," for Betancourt "could take reprisals against [her], due to the past incident." SUMF at ¶ 102. She requested a transfer to another CIC unit pending investigation of the sexual harassment complaint against her. *Id.* Otherwise, she did not object to the transfer itself while the sexual harassment complaint was being investigated. SUMF at ¶ 103.

### J. *Result of Investigation*

On January 3, 2011, and after an administrative investigation related to Manzur's complaint, the PRPD dismissed the complaint against plaintiff. SUMF at ¶ 104. On January 13, 2010, she filed an EEOC complaint alleging gender-based discrimination and retaliation in violation of Title VII (Docket No. 36, Exh. 1). This suit followed.

---

**6.** As correctly clarified by plaintiff, the letter informing Colón of his transfer is dated July 15, 2009, but the transfer was to be effective on July 21, 2009.

## III. *DISCUSSION*

### (a) Hostile work environment under Title VII

█ Plaintiff contends that she was submitted to a hostile work environment because of her sex. Hostile work environment is a form of unlawful discrimination prohibited by Title VII. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). It exists when the complained-of conduct is so severe or pervasive as to alter the conditions of plaintiff's employment and create an abusive work environment. To be actionable, the record must show some link to the employer itself to sustain employer liability. *Medina–Rivera v. MVM, Inc.,* 713 F.3d 132, 137 n. 2 (1st Cir.2013); *Fontanillas–López v. Morel Bauza Cartagena & Dapena, LLC,* 995 F.Supp.2d 21, 47 (D.P.R.2014). Assuming, *arguendo,* that plaintiff has adduced sufficient evidence of a hostile work environment, there is no basis for employer liability here.

█ Employer liability depends upon whether the alleged harassment is caused by plaintiff's supervisor or by a co-employee. If caused by a supervisor, the employer is liable unless the harassment has not culminated in a tangible employment action, and the employer proves that it exercised reasonable care to prevent and correct any harassing behavior, and plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). When coworkers are responsible for the creation of a hostile work environment, an employer can only be liable if the harassment is causally connected to the employer's negligence in failing to discover the harassment or to take appropriate corrective action to

stop it. *Noviello v. City of Boston,* 398 F.3d 76, 95 (1st Cir.2005). The parties agree that the harassment was not caused by a supervisor, focusing instead on the sufficiency of the PRPD's response to plaintiff's claim (Docket No. 78 at pp. 8–10; Docket No. 85 at pp. 3–4, 7–8).

█ Appropriate corrective action is action reasonably calculated to halt the harassment. *Alvarez v. Des Moines Bolt Supply, Inc.,* 626 F.3d 410, 421 (8th Cir. 2010); *Andreoli v. Gates,* 482 F.3d 641, 644 (3d Cir.2007); *Duncan v. Manager, Dept. of Safety, City and County of Denver,* 397 F.3d 1300, 1310 (10th Cir.2005). Its reasonableness depends on elements such as whether the employer investigated the complaint; the promptness with which it does so; if a remedial measure is undertaken; and the effectiveness of that measure. *See, Turnbull v. Topeka State Hosp.,* 255 F.3d 1238, 1244–1245 (10th Cir.2001) (identifying criteria against which reasonableness may be assessed); *Alvarez,* 626 F.3d at 421 (same); *Andreoli,* 482 F.3d at 644 (same). Applying these factors to the uncontested facts here yields no liability.

█ On February 23, 2009, plaintiff complained for the first time of gender based discrimination in reaction to León's report of an incident in which she allegedly disobeyed his instructions as acting supervisor. On February 24, 2009, Commander Ortiz (i) met with plaintiff and Millán, (ii) ordered Millán to investigate her allegations and to take appropriate action for the officers in the Special Arrest Unit to cease and desist from engaging in the objected to conduct; (iii) gave Millán the Justice Department's Memorandum to be discussed in a Local Academy; and (iv) instructed Millán to present a certification. On February 27, 2009, Millán conducted a Local Academy wherein he discussed proper behavior, sexual discrimination, and sexual harassment, together with a warning that sexist comments would not be to-

lerated, and he so certified to Commander Ortiz submitting the signatures of all members of the Special Arrests Unit who attended, including plaintiff, Nuñez, Colón, and León.

These measures ended the harassment. Nevertheless, in March 2009, plaintiff personally complained to PRPD Superintendent, Figueroa–Sancha, providing him with a copy of the same letter addressed to Ortiz. The same month, Millán was transferred to another division because of plaintiff's complaint. In July 2009, Colón was transferred to the Robbery Division, and in August 2009 León was transferred to the Technical Services Division.

On this record, the PRPD exercised reasonable care to correct any sexually harassing behavior against plaintiff. No further incidents of reported harassment occurred after February 27th. The employer's response was prompt and effective. Consequently, the sexual harassment claim must be dismissed. *See, Alvarez,* 626 F.3d at 421 (summary judgment dismissing sexual harassment claim due to reasonableness of remedial measures adopted by employer in response to employee complaint); *Andreoli,* 482 F.3d at 644, n. 2 ("A remedial action that stops the harassment is adequate as a matter of law").

### (b) Retaliation

■ Plaintiff alleges that she was retaliated against for complaining of discrimination. Title VII bars employers from retaliating against an employee because she "has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a); *Univ. of Tex. v. Nassar,* ——— U.S. ———, 133 S.Ct. 2517, 2523, 186 L.Ed.2d 503 (2013). To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal nexus exists between the protected conduct and the adverse action. *Collazo–Rosado v. University of Puerto Rico,* 765 F.3d 86, 92 (1st Cir.2014); *Garayalde–Rijos v. Municipality of Carolina,* 747 F.3d 15, 24 (1st Cir.2014).

■ If the plaintiff has made a *prima facie* showing of retaliation, the defendant must articulate a legitimate, non-retaliatory reason for the employment decision. *King v. Town of Hanover,* 116 F.3d 965, 968 (1st Cir.1997); *Collazo–Rosado,* 765 F.3d at 92. Should the defendant meet this burden, the plaintiff must show that the proffered reason is pretext. *Kelley v. Correctional Medical Services, Inc.,* 707 F.3d 108, 115 (1st Cir.2013).

■ By complaining of discrimination, plaintiff engaged in protected activity. And the court will assume that her transfer from Ponce to Juana Díaz may be considered an adverse employment action. But the record does not reflect a causal relationship between those events. In proper circumstances, causality may be established by temporal proximity.[7] In those cases, the proximity must be very close. *Clark County School Dist. v. Breeden,* 532 U.S. 268, 273–274, 121 S.Ct. 1508,

---

**7.** But *see, Williams v. Serra Chevrolet Automotive, LLC,* 4 F.Supp.3d 865, 879 (E.D.Mich. 2014) (indicating that in light of *Gross v. FBL Financial Services,* 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) and *Nassar,* 133 S.Ct. at 2517, temporal proximity alone is not enough to allow a reasonable inference of the but-for causation required to prevail in a retaliation action); *Carrero–Ojeda v. Autoridad de Energía Eléctrica,* 755 F.3d 711, 720 (1st Cir.2014) (noting that while temporal proximity is one factor from which an employer's bad motive can be inferred, by itself, it is not enough—especially if the surrounding cir-

149 L.Ed.2d 509 (2001). Thus, adverse employment actions more than three months after protected activity have been found insufficiently connected to that particular activity to support a reasonable inference of retaliatory motive. *See, Colburn v. Parker Hannifin,* 429 F.3d 325, 330 (1st Cir.2005) (no inference of retaliatory motive found when employee began to take leave in October and was not terminated until almost four months later); *Calero–Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 25–26 (1st Cir.2004)(noting that four and three month periods between protected activity and adverse action have been held insufficient to establish causation); *Fontanillas–López,* 995 F.Supp.2d at 52 (termination three days shy of six months after plaintiff lodged complaints does not sustain finding of causation).[8]

■ In the main, plaintiff's retaliation claim rests on her letter of February 23, 2009 denouncing sex discrimination, and the transfer made in January of 2010, eleven months later, following Manzur's administrative complaint. In her view, the transfer was but a fabrication for complaining of sex discrimination and the hostile work environment (Docket No. 1 at ¶ 55).[9] These circumstances undercut any cognizable claim of causation. *See, Velazquez–Ortiz v. Vilsack,* 657 F.3d 64, 73 n.

8 (1st Cir.2011)(eight-month gap between events considered insufficient to raise an inference of retaliation); *Mesnick v. General Elec. Co.,* 950 F.2d 816, 828 (1st Cir.1991)(holding that a time lapse of nine months between the filing of a formal grievance and the adverse employment action undercuts any inference of causation); *King,* 116 F.3d at 968 (finding that disciplinary action five months after protected activity does not present a jury question regarding retaliation). In the absence of causality, plaintiff's claim fails. *See, Perry,* 489 Fed.Appx. at 644 (summary judgment dismissing retaliation claim due to lack of causation); *Fontanillas–López,* 995 F.Supp.2d at 52–53 (same); *Rodríguez–Vilanova v. Stryker Corp.,* 2014 WL 203291 at *9 (D.P.R. January 17, 2014)(same).

■ Moreover, even if plaintiff had made a *prima facie* case of retaliation—which is not the case here—the PRPD met its burden to establish a "legitimate, non-retaliatory" reason for the transfer: a complaint of sexual harassment filed against her by Manzur, an officer who was totally unrelated to her previous complains of alleged discriminatory conduct. Plaintiff never objected to a transfer as such while Manzur's complaint was investigated.[10] The officers referred to in her Feb-

cumstances undermine any claim of causation).

8. *See also, Perry v. Kappos,* 489 Fed.Appx. 637, 643 (4th Cir.2012) (three-month lapse too long to establish causation); *Strong v. University Healthcare System, LLC.,* 482 F.3d 802, 808 (5th Cir.2007) (three and one-half month gap too long); *Little v. BP Exploration & Oil Co.,* 265 F.3d 357, 365 (6th Cir.2001) (three-month gap too long); *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient).

9. Plaintiff also alleges that the counseling memorandum that Millán placed in her personnel file was retaliatory (Docket No. 85 at

pp. 9–10). A plaintiff must engage in statutorily protected activity before an employer can retaliate against her for engaging in that activity. *See, Herron v. DaimlerChrysler Corp.,* 388 F.3d 293, 302 (7th Cir.2004)(so holding). Along the same line, even construing the memorandum as an adverse employment action it was not in retaliation as plaintiff alleges, for it was issued before she complained of discrimination.

10. Although plaintiff expressed *ex-ante* reluctance to work under the authority of the Officer in charge of the Juana Díaz station, the record does not show *ex-post* problems of any kind resulting from the transfer.

ruary 2009 letter were transferred even before Manzur accused her of sexual harassment. And transfers are a legitimate mechanism employers may use during harassment investigations. *See, Savino v. C.P. Hall Co.,* 199 F.3d 925, 933 (7th Cir.1999) (relocation of alleged harasser in response to harassment complaint); *Banacki v. City of South Bend Fire Dept.,* 2010 WL 2038573, *3 (N.D.Ind. May 19, 2010)(transferring alleged harasser to another station during sexual harassment investigation).

■ Finally, the evidence is insufficient to support a finding of pretext. Pretext analysis is more demanding than the assessment of whether a *prima facie* case has been established, moving the inquiry to a new level of specificity. *Mariani–Colón v. Department of Homeland Security ex rel. Chertoff,* 511 F.3d 216, 222 (1st Cir.2007); *Kosereis v. Rhode Island,* 331 F.3d 207, 213 (1st Cir.2003). It is not enough for a plaintiff merely to impugn the veracity of the employer's justification. *Meléndez v. Autogermana, Inc.,* 622 F.3d 46, 52 (1st Cir.2010); *Morgan v. Massachusetts General Hosp.,* 901 F.2d 186, 191 (1st Cir.1990); *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

■ In this progression, plaintiff must produce evidence that the employer did more than get it wrong. *Johnson v. Weld County, Colo.,* 594 F.3d 1202, 1211 (10th Cir.2010). She must elucidate specific facts which would enable a jury to find that the reason given for the employer's action—the investigation of Mazur's sexual harassment allegations—is a lie intended to cover up the employer's real motive: retaliation. *Collazo–Rosado,* 765 F.3d at 92; *Meléndez,* 622 F.3d at 52; *Mesnick,* 950 F.2d at 824. She may do so showing such weaknesses, inconsistencies, incoherences, implausibilities, or contradictions in the employer's proffer as could lead a reasonable factfinder to rationally find it unworthy of credence. *Gómez–González v. Rural Opportunities,* 626 F.3d 654, 662–663 (1st Cir.2010). The record does not sustain a finding along those lines.

■ The employer's proffer has a factual basis: a coworker complained that plaintiff was sexually harassing him, and as part of the investigation plaintiff was transferred from Ponce to Juana Díaz. The basis for that transfer is not new. Plaintiff has so known since she was notified of it. Such transfers are a plausible response to complaints, as part of those types of investigations. In this case, it was not an afterthought inconsistent with prior or shifting explanations. Appraisal of record as a whole discloses absence of any significantly probative evidence that plaintiff's transfer in January 2010 would not have occurred but for the fact that she complained of discrimination in February 2009.

## IV. CONCLUSION

For the reasons stated, plaintiff has not met her burden of creating a triable issue of fact. Therefore, defendant's motion for summary judgment (Docket No. 78) is GRANTED and plaintiff's claims DISMISSED.

Judgment shall be entered accordingly.

**SO ORDERED.**